UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| ROY J. JOHNSON, | ) | |
|---|---|---|
| NANCY C. JOHNSON, and | ) | |
| MICHAEL and RAVEN MCCARROLL, | ) | |
| as next friends of FELICITY GRACE | ) | |
| MCCARROLL, a minor, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 2:09-CV-142 |
| | ) | (GREER/SHIRLEY) |
| V. | ) | |
| | ) | |
| ELECTROLUX HOME PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral of the District Court for report and recommendation [Doc. 93]. Now before the Court is a Motion for Summary Judgment [Doc. 73], filed by Defendant Electrolux Home Products, Inc., ("Electrolux"). The Plaintiffs have filed a Memorandum of Law in Support of Opposition to Motion for Summary Judgment [Doc. 86], and the Court heard oral arguments on this matter on June 27, 2011.

The Court finds that the Motion for Summary Judgment is now ripe for adjudication. For all of the reasons stated below, the Court finds that based upon the evidence in the record there is no genuine issue of material fact in this case and Electrolux is entitled to judgment as a matter of law. Therefore, the undersigned will **RECOMMEND** that the Motion for Summary Judgment be **GRANTED**.

## I. BACKGROUND

The background and procedural posture of this matter are familiar to the Court and the parties and has been summarized in the Court's previous Order [Doc. 105 at 2]. Essentially, the Plaintiffs claim that a Tappan range manufactured by the Defendant produced formaldehyde and caused personal injury to their persons and damaged both their real and personal property.

Of note, he Court has recently entered orders limiting and/or precluding the expert testimony of two of the Plaintiffs' proposed experts: Jean Byarlay, M.D., and Roland Chretien, III. The Court excluded Dr. Byarlay, who is the Plaintiffs' treating physician, from testifying "as a liability or causation expert witness," [Doc. 105 at 5], but found that she could testify regarding her treatment of the Plaintiff. The Court explained that Dr. Byarlay's testimony at trial would "be limited in stating her diagnosis, and she may not express opinions regarding the levels of exposure [to formaldehyde], the nature or extent of such exposure, nor offer opinions regarding the source(s) of such exposures." [Doc. 105 at 5]. The Court, however, excluded Mr. Chretien from testifying at the trial as to any of his opinions, because the proffered opinions did not comply with Rule 702 of the Federal Rules of Evidence or the Supreme Court of the United States's holding in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). [Doc. 106].

## II. POSITIONS OF THE PARTIES

Electrolux moves the Court to grant it summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and to dismiss this lawsuit with prejudice. [Doc. 73 at 1]. In support of this request, Electrolux argues, *inter alia*, that: the Plaintiffs have failed to produce any evidence supporting their claims that the Tappan range caused any of Plaintiffs' alleged injuries; none of the fact witnesses disclosed by the Plaintiffs have any evidence to support the Plaintiffs claims, nor do

they have medical or scientific proof that any alleged odor from the range was connected to Plaintiffs' alleged medical problems; and Plaintiffs have failed to produce a single medical causation or products defect expert on or before their expert disclosure deadline. [Doc. 73 at 1-4].

The Plaintiffs respond that the Defendant's Motion for Summary Judgment is "an undeniable waste of the Court's time." [Doc. 86 at 1]. The Plaintiffs maintain that Electrolux is unable to establish the absence of genuine issues of material facts. [Doc. 86 at 6]. The Plaintiffs state that summary judgment should be denied because: "[c]lear, competent evidence has been produced showing that Defendant's Electrolux range caused injuries"; discovery has not been completed; and Electrolux has not met the summary judgment standard. [Doc. 86 at 1-2].

## III.   STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

3

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Id. at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

## IV. ANALYSIS

Having reviewed the parties' filings, the Court finds it appropriate to briefly discuss the procedural posture, deadlines, and discovery in this matter. Thereafter, the Court will address the request for summary judgment.

### A. Procedural Posture and Discovery

The Court will initially address the Plaintiffs' contention that Electrolux's request for summary judgment should be denied because discovery in this matter has not been completed.

This case was filed in state court on June 19, 2009, and removed to this court on July 22, 2009. On August 26, 2009, the Court issued a Scheduling Order setting this matter for trial on October 19, 2010. [Doc. 13]. By an Order [Doc. 22] entered March 30, 2010, the Court extended the deadlines for expert disclosures, Daubert motions, and dispositive deadlines. On June 4, 2010, the Court continued the trial of this matter to January 11, 2011, and extended other discovery deadlines, based upon the substitution of new counsel for the Plaintiffs. On October 15, 2010, the Court again extended the deadlines in this case, including the deadline for taking discovery and disclosing experts. [Doc. 69]. This Order contained the final deadline for Plaintiffs' expert

4

Case 2:09-cv-00142-JRG-CCS   Document 107   Filed 08/31/11   Page 4 of 14   PageID #: 941

disclosures: November 2, 2010. Following mediation, the trial of this matter was reset to October 25, 2011, and though the expert disclosure deadline was not extended, the parties were given up to and including August 15, 2011, to complete discovery.

Because "the scope of discovery is within the sound discretion of the trial court," the non-movant has "no absolute right to additional time for discovery." Emmons v. McLaughlin, 874 F.2d 351, 356 (6th Cir.1989) (citations omitted). " Nevertheless, the district court must afford the non-movant a 'sufficient opportunity for discovery.'" Bowling v. Wal-Mart Stores, Inc., 233 Fed. App'x 460, 464, (6th Cir. 2007) (quoting Vance v. United States, 90 F.3d 1145, 1149 (6th Cir.1996)).

The Court has considered the five factor inquiry announced in Plott v. General Motors Corporation, 71 F.3d 1190, 1196-97 (6th Cir.1995), including: (1) when the party learned of the issue that is the subject of the desired discovery, (2) whether the desired discovery would change the court's ruling, (3) how long the discovery period had lasted, (4) whether the party was dilatory in its discovery efforts, and (5) whether the party was responsive to discovery requests.

Applying these factors, the Court finds that summary judgment in this case is appropriate, despite the discovery deadline expiring after the briefing and oral arguments on the summary judgment issue. While the Plaintiffs are correct that the deadline for completing discovery in this case had not expired at the time the motion and responses were filed, there has been ample opportunity to take discovery, and there have been numerous extensions of the deadlines in this case, mostly at the Plaintiffs' request. Further, as the Court's analysis below reflects, the lack of evidence regarding proximate cause or the dangerousness or defectiveness of the range is unlikely to be cured by additional discovery. Moreover, the Plaintiffs have not identified any specific testimony or

5

evidence that they are attempting to secure to defeat summary judgment. Finally, as of the date of this order, discovery has closed, and the Plaintiffs have not asked for leave to file any supplement or additional evidence that would demonstrate a genuine issue of material fact.

Accordingly, the Court finds that the Plaintiffs' position that granting summary judgment at this juncture would be inappropriate and premature is not well-taken.

**B.     Analysis Pursuant to the Tennessee Products Liability Act of 1978**

The parties do not appear to dispute that Tennessee law is the applicable law governing this dispute, and it is well-settled that a federal court sitting in diversity, must apply the law of the highest state court if that court has ruled on the matter in dispute. Otherwise, the court may rely on case law from lower state courts. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C., 636 F.3d 235, 240 (6th Cir. 2011).

The Tennessee Products Liability Act of 1978 ("the Act") directs that "[a] manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code Ann. § 29-28-105(a).

The Act was written to provide the exclusive remedy for injuries caused by products, and a product liability action under the Act includes "all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever." Tenn. Code Ann. § 29-28-102(6).

6

In Griffin v. Navistar, 2010 WL 2734043 (W.D. Tenn. July 8, 2010), Judge McCalla summarized the case law applying the Act, by explaining:

> To establish a prima facie case of products liability under Tennessee law, a plaintiff must show that "(1) the product was defective and/or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the plaintiff's injury was proximately caused by the defective product." Sigler v. Am. Honda Motor Co., 532 F.3d 469, 483 (6th Cir.2008) (citation and quotation marks omitted). . . .
>
> A product is defective if it was "unsafe for normal or anticipatable handling and consumption" when it left the manufacturer's control. Tenn. Code Ann. § 29–28–102(2). This standard turns in part on "the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market...." Brown v. Crown Equip. Corp., 181 S.W.3d 268, 281–82 (Tenn. 2005) (quoting Tenn. Code Ann. § 29–28–105(b)). "Consideration is given to the customary designs, methods, standards, and techniques of manufacturing ... by other manufacturers ... of similar products." Id. at 282 (grammatical marks omitted).
>
> There are two tests under Tennessee law to determine whether a product was in an unreasonably dangerous condition when it left the manufacturer's control. "Under the prudent manufacturer test, liability is imposed in circumstances in which a reasonably prudent manufacturer with knowledge of a product's dangerousness would not place the product in the stream of commerce." Id. (quoting Ray ex rel. Holman v. BIC Corp., 925 S.W.2d 527, 532 (Tenn.1996)) (internal quotation marks omitted). As with the defect theory of liability, the jury must consider the customary design standards in the industry. Id. The prudent manufacturer standard also requires application of the so-called Wade–Keeton or risk-utility test, which turns on a number of factors: the product's utility; the likelihood and probable seriousness of injury from the product; the availability of an adequate and not unreasonably expensive substitute product; the user's ability to avoid danger by careful use of the product; the user's anticipated awareness of and ability to avoid the product's inherent danger because of general knowledge of that danger, its obviousness, or a warning; and the feasibility of spreading the loss by price-setting or the use of liability insurance. Ray, 925 S.W.2d at 532–33, 533 n. 10 (citing Wade, On the Nature of Strict Tort Liability for Products,

7

44 Miss. L.J. 825, 837–38 (1973)).

> Under the consumer expectation test, a product must be "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Ray, 925 S.W.2d at 530 ( quoting Restatement (Second) of Torts § 402A, cmt. (i); Vincer v. Esther Williams All–Aluminum Swimming Pool Co., 69 Wis.2d 326, 230 N.W.2d 794, 798–99 (Wis. 1975)). Unlike the "seller oriented" prudent manufacturer test, the consumer expectation test is "buyer oriented." Id. at 531. "Under this test, a product is not unreasonably dangerous if the ordinary consumer would appreciate the condition of the product and the risk of injury." Id. at 530.

Griffin, 2010 WL 2734043 at *1-3.

With this law in mind, the Court will examine each of the three *prima facie* elements to the Plaintiffs' claims – *i.e.*, whether the range was defective or unreasonably dangerous, whether the defect existed at the time the range left Electrolux's control, and whether the defect or unreasonably dangerous condition was the proximate cause of injuries to the Plaintiffs.

**1.  Unreasonably Dangerous**

As stated above, there are two tests for determining whether a product is unreasonably dangerous: the prudent manufacturer test and the consumer expectation test. The Court finds that, regardless of which of these theories is applied to this case, no genuine issue of material fact as to liability exists in this case and Electrolux is entitled to judgment as a matter of law.

8

a.  *The Prudent Manufacturer Test*[1]

"Under the prudent manufacturer test, liability is imposed 'in circumstances in which a reasonably prudent manufacturer with knowledge of a product's dangerousness would not place the product in the stream of commerce.'" Brown v. Crown Equipment Corp., 181 S.W.3d 268, 282 (Tenn. 2005) (quoting Ray ex rel. Holman v. BIC Corp., 925 S.W.2d 527, 532 (Tenn.1996)).

Tennessee courts and federal courts applying Tennessee law have firmly established that expert witness testimony is required to impose liability under the prudent manufacturer test. See Irion v. Sun Lighting, Inc., 2004 WL 746823, *7 (Tenn. Ct. App. April 7, 2004) ("Expert testimony is required under the prudent manufacturer test."); see also Ray, 925 S.W.2d at 532 (holding that because the prudent manufacturer test requires proof about the reasonableness of the manufacturer's decision to market a product "expert testimony about the prudence of the decision to market would be essential"); Sigler v. Am. Honda Motor Co., 532 F.3d 469, 484 (6th Cir. 2008).

In this case, the Plaintiffs have brought forth no expert testimony demonstrating that a reasonably prudent manufacturer with knowledge of any dangerousness of the Tappan range would not place the product in the stream of commerce. The Plaintiffs have failed to demonstrate an essential element to proving liability under this test, and the Court finds that, to the extent the

---

[1] In its brief, Electrolux asserts that the "Tappan Range is a complex product, and accordingly, only the prudent manufacturer test should apply in this case, which requires expert testimony." In support of this position, Electrolux cites the Court to a lengthy citation to Brown v. Raymond Corp., 432 F.3d 640 (6th Cir. 2005), which in part notes that other courts have found the prudent manufacturer test to be the only appropriate means for establishing the unreasonable dangerousness of "a complex product about which an ordinary consumer has no reasonable expectation." [Doc. 74 at 13 (citing Brown, 432 F.3d 643-44)].

While Electrolux appears to take the exclusive applicability of the prudent manufacturer test as a foregone conclusion, the Court has serious reservations about its applicability to the instant case. Nonetheless, because the Court finds that Electrolux is entitled to judgment in its favor regardless of whether the prudent manufacturer or the consumer expectation test, the Court will apply both tests.

9

Plaintiffs rely upon the prudent manufacturer test as their theory for imposing liability, the Court finds there is no genuine issue of material fact as to this theory and Electrolux is entitled to judgment as a matter of law.

b.  *The Consumer Expectation Test*[2]

The Supreme Court of the State of Tennessee has described application of the consumer expectation test, as follows:

> The ability to go forward on a claim that a product is unreasonably dangerous based on the consumer expectation test requires that the plaintiff provide sufficient evidence to create a question of fact that the product was "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." See Tenn. Code Ann. § 29–28–102(8). Once this question of fact is established, however, "[t]he general rule in Tennessee is that the issue of whether a product is defective or unreasonably dangerous is one for the jury," Curtis v. Universal Match Corp., Inc., 778 F. Supp. 1421, 1427 (E.D. Tenn. 1991). Under the consumer expectation test, "a plaintiff is required to produce evidence of the objective conditions of the product as to which the jury is to employ its own sense of whether the product meets ordinary expectations as to its safety under the circumstances presented by the evidence." Arnold v. Dow Chemical Co., 91 Cal. App. 4th 698, 110 Cal. Rptr. 2d 722, 737 (2001).

---

[2]As alluded to above and without deciding, the Court would note that the consumer expectations test is most likely the test appropriate in this case. In Jackson v. General Motors Corp., 60 S.W.3d 800 (Tenn. 2001), the Tennessee Supreme Court concurred in the view that application of the consumer expectation test "does not depend on a product's complexity in technology or use," Id. at 806. Rather, "prolonged use, knowledge, or familiarity of the product's performance by consumers is sufficient to allow consumers to form reasonable expectations of the product's safety." See, e.g., Ray, 925 S.W.2d at 531 (using two common kitchen accessories/appliances as examples of products to which application of the consumer expectation test would be appropriate). Consistent with this view, other courts have held that consumer expectation tests similar to that applied under Tennessee law are applicable to claims involving consumer home products, such as ovens. See, e.g., Donegal Mut. Ins. Co. v. White Consol. Indus., 852 N.E.2d 215 (Ohio Ct. App. 2006), (applying the consumer expectation test under Ohio law to a Frigidaire (Electrolux) stove where plaintiffs' home was destroyed by a fire and attempt to engage the oven's self-cleaning feature).

10

Jackson v. Gen. Motors Corp., 60 S.W.3d 800, 805-806 (Tenn. 2001).

As noted by the Court in Jackson, once a Plaintiff establishes that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, the case will proceed to a jury. Moreover, under the consumer expectation test, no expert testimony is required for proving the reasonable consumer expectation. See Spicer v. Brinkmann Co., 2006 WL 5164776, *1 (M.D. Tenn. Sept. 6, 2006). Notwithstanding, failure to present proof of a dangerous condition "other than generic opinions" will not establish a genuine issue of material fact sufficient to defeat summary judgment under either the consumer expectation test or the prudent manufacturer test. See King v. Danek Medical, Inc., 37 S.W.3d 429, 444 (Tenn. Ct. App. 2000).

In this case, the Plaintiffs have failed to bring forth any evidence of a dangerous condition, let alone dangerousness beyond the extent contemplated by the ordinary consumer who would purchase it. The Plaintiffs have offered witnesses who complain about the smell of the range, but none of these witnesses have linked this to a dangerous condition or consumer expectations of the range. The Plaintiffs themselves have only alleged gut feeling allegations that the stove caused them harm, but they have presented no proof of this generic suspicion.

Certainly, the Plaintiffs believe their stove is the source of their alleged illnesses and injuries. However, they have not provided any expert proof to support their own self-serving belief. Even if the Court accepted that there was some reliable evidence of both formaldehyde emissions and Plaintiffs' exposure, the Court would still be left with a lack of any evidence that those emissions or exposure levels are dangerous,[3] let alone dangerous to an extent beyond that contemplated by the

---

[3] Any reference to formaldehyde levels based on Mr. Chretien's PID readings has previously been discounted and disapproved. Even if the Court were to consider those readings and levels, they do not fulfill the requirements of the Act or applicable tests. Those readings and levels, even if relating to

11

ordinary consumer.

Accordingly, the Court finds that, to the extent the Plaintiffs rely upon the consumer expectation as their theory for imposing liability, the Court finds there is no genuine issue of material fact as to this theory and Electrolux is entitled to judgment as a matter of law.

**2.      The Defect's Existence at the Time the Product Left the Manufacturer's Control**

Having found that the Plaintiffs have failed to meet their burden in showing that the Tappan range was defective or unreasonably dangerous, the Court finds, as a corollary, that the Plaintiffs have failed to demonstrate that the Tappan range was defective or unreasonably dangerous at the time it left Electrolux's control. The Plaintiffs have brought forth no evidence on this point and have wholly neglected to demonstrate any genuine issue of material fact. The Court finds that, on this basis, Electrolux is also entitled to judgment as a matter of law.

**3.      Proximate Causation**

Finally, the Court finds that the Plaintiffs have failed to demonstrate that their injuries were caused by the Tappan range being unreasonably dangerous or defective. Again, the Court has found that the Plaintiffs have failed to meet their burden in demonstrating an unreasonably dangerous or defective condition, sufficient to survive a motion for summary judgment under Rule 56.

Nonetheless, even assuming that such a condition existed, the Plaintiffs through their proposed experts and treating physicians have in no way demonstrated that their alleged conditions,

---

formaldehyde only, would not violate OSHA standards or ACGIH standards but only NIOSH standards, unless the oven reached self-cleaning temperatures. Because there is no evidence the Tappan range was ever used in self-cleaning mode or reached temperatures approximating self-cleaning temperatures and because there is no evidence that exceeding NIOSH's low standards is either unreasonably dangerous or beyond ordinary consumer expectations, Mr. Chretien's PID readings, even if accepted into evidence, could not form the basis for defeating the motion for summary judgment.

12

injuries, or illnesses were caused by or tied to the Tappan range. Plaintiffs have disclosed three experts: Mr. Chretien, Dr. Byarlay, and Mr. VanEtten. Mr. Chretien and Dr. Byarlay have been excluded from offering medical causation evidence. [See Doc. 105 at 5-6; Doc. 106 at 16]. Mr. VanEtten is an industrial hygienist, who would almost certainly be unqualified to testify regarding medical causation, and further, the Plaintiffs have failed to cite the Court to any opinions from Mr. VanEtten that they propose demonstrate medical causation. [See Doc. 86].

The record is fraught with medical causation issues regarding whether the Plaintiffs various complaints and conditions and alleged illnesses or injuries: (1) arose as a medical result of the alleged exposures or were preexisting, (2) resulted from exposure to formaldehyde or from some other cause, *e.g.*, allergies, ozone exposures, other exposures, etc., and (3) resulted from formaldehyde emissions or exposure from the Tappan range as opposed to other sources of formaldehyde, *e.g.* building products in the residence, cigarettes, etc.

The Court finds that Electrolux is also entitled to judgment as a matter of law, based upon the lack of evidence demonstrating proximate cause.

## V. CONCLUSION

Based on the foregoing, the Court finds that the pleadings, depositions, answers to interrogatories, admissions on file, affidavits, and admissible evidence in this case show that there is no genuine issue of material fact remaining in this case and that Electrolux is entitled to judgment as a matter of law.

Accordingly, the undersigned finds that the Motion for Summary Judgment **[Doc. 73]** is well-taken, and the undersigned **RECOMMENDS**[4] that it be **GRANTED**.

Respectfully Submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).